IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS E. MURPHREE | § § § | |
| v. | § § | C.A. 4:13-00453 |
| NED A. GODSHALL | § § § | |

## **DEFENDANT'S FIRST AMENDED COUNTERCLAIM**

Defendant Ned A. Godshall files these counterclaims against Plaintiff/Counter-Defendant Dennis E. Murphree.

## PARTIES

1. Godshall is an individual who resides in Albuquerque, New Mexico.

2. Murphree is an individual who resides in Houston, Texas. He has appeared in this litigation and may be served with process by service on his attorney of record.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Godshall's counterclaims under 28 USC § 1367, which confers federal jurisdiction over the compulsory counterclaims Godshall brings here, and under 28 USC § 1331 because the claims stated exist between citizens of different states and the amounts in controversy exceed $75,000. This Court has personal jurisdiction over Murphree because he resides and does business in Texas. Venue is proper in the Southern District of Texas because Murphree filed in this venue and Godshall did not challenge the venue.

## FACTUAL BACKGROUND

4. In April and May of 2001, Murphree and Stephenson made specific representations to Godshall related to an investment in their MVP GP, V, LP and MVP V, LP. These were made in writing through a prospectus, a letter, and the agreements themselves. Same are attached hereto as exhibits 1, 2 and 3. Although too many representations are made to recount herein verbatim, the initial letter (exhibit 1) makes many representations of investments, liquidity, and the sale of some of Murphree's "interest in Fund V now for a very attractive price." Murphree then pegs the value at $87,500.00 per quarter point, and states that even at the current raise, the value is 5X to 7.5X. The fund never approached any such valuation.

5. On May 3, 2001, Murphree and Godshall reached an agreement through which Murphree sold and Godshall purchased an a small fraction of Murphree's personally-owned interest in a General Partnership ["MVP-GP V"] that was to manage a venture capital fund [MVP-V, LP]. Murphree and Thomas J. Stephenson were principals in the GP entity and in Greenbay Ventures II, LLC ("Greenbay"), the GP Entity's general partner. Greenbay Ventures II, LLC ["Greenbay"] was MVP-GP V's general partner. Greenbay has three members: Murphree, Thomas J. Stephenson, and David M. Lee.

6. Under the agreement, Godshall was to receive a 1.25% interest in the general partner's (MVP-GP V's) "carry," the 20% of future 'profit' reserved for only MVP-GP V owners, on top of the 80% limited partner interest for the funding used to finance the entire fund. Murphree represented that the 80% limited partnership [MVP-V,

LP] interest would be sold to limited partners to generate $120 million. The agreement further represented that Godshall's interest in this investment would be worth more than $1 Million dollars at payout. Instead, the fund was closed in 2011 and Godshall received nothing, not a penny. Not even this principal.

7. Through this confusing and complicated transaction, Godshall held neither an interest in the entity that actually managed the fund, nor the LP which were the primary beneficiaries of the fund. He held an assigned interest in Murphree's personal interest in MVP GP V to which Murphree committed to pay back with future interest.

8. The general partner's "carry" interest was supposed to receive 20% of the fund's profits over its ten-year term after the limited partners recovered their $120 million. So if the fund generated $220 million after 10 years, the general partner's "carry" would total $20 million (20% of the $100 million over the limited partner's invested funds); Godshall would be entitled to 1.25% of that amount (or $250,000). The "carry" is designed to reward the general partner's efforts for the fund's success at the end of the ten-year term of the LP fund. Stated differently, Murphree sold to Godshall one-quarter of one-percent (0.25%) of the net profit from the fund at the end of the ten-year term: 1.25% of the 20% 'carry' equals 0.25% of the entire 100% of the fund, after the 80% limited partners first receive all of their initial investment back: 1.25% / 5 = 0.25%.

9. Murphree made numerous false representations to induce Godshall into executing the Partnership Interest Assignment that forms the basis of Murphree's claims. Murphree told Godshall that the partnership would comprise a greater than $100 million

3

fund that would be actively managed by Murphree and Stephenson; neither of those representations was true.

10. Murphree and Stephenson sent Godshall a written prospectus, met with Godshall in person, and told Godshall the investment would multiply in value (5X to 7.5X) over the ten-year life of the fund; that was not true, either. Murphree reduced some of these representations to writing in a prospectus for the investment which he gave Godshall, intending Godshall to rely upon same in purchasing the portion of Murfree's interest, as well as, the interest carry Godshall was to receive.

11. Moreover, at the time of the "investment" Murphree failed to disclose that Murphree had personal financial difficulties in fact needed the money from Godshall for his own purposes. Murphree basically took Godshall's money and pocketed same as a personal loan.

12. Murphree represented to Godshall that the money Godshall invested was supposed to be "put to work" as part of the larger investment vehicle but it simply was not. Instead, Murphree effectively took Godshall's 'investment' as an advance on the fund's success (which never came) and then failed to follow through with the representations he made about the partnership and the fund. He failed to pursue the limited partner investment on the scale that he represented to Godshall and failed to actively manage the assets that were invested in the fund.

13. On several occasions, Godshall confronted Murphree with the falsity of the representations; each time, Murphree promised Godshall that he would pay back the

money Godshall had given him (with interest) if the "carry" did not pay out as he had represented. This promise of a future payment was made while Murphree knew all the while he never intended to pay Godshall. Murphree affirmed that promise repeatedly over the course of the ten-year life of the fund and afterwards, including within weeks of hiring counsel and suing Godshall. Murphree but never did repay the money. Murphree's continued representations renewed both the obligations related to same, and renewed his promises. Each and every time, Godshall relied on such representations, which were false, and which Godshall has been injured.

14. On several other occasions over this same period, Stephenson promised to personally pay Godshall back (with interest) the full amount that Murphree had taken from Godshall. Stephenson did so as a representative and agent of Murfree. On each occasion, Stephenson related to Godshall his personal regret for his involvement in inducing Godshall to provide, in essence, what turned out to simply be a personal loan to Murphree rather than a venture capital investment. Stephenson repeatedly admitted the facts and complaints alleged by Godshall and represented that Godshall would be paid back. In doing so, Stephenson, on behalf of Murphree continued to

15. Upon information and belief, Murphree was having financial difficulties in the timeframe when he induced Godshall to provide him the funds. Murphree induced Godshall, Leslie Moore, and others to make similar "investments" into MVP-GP V so that he could use the funds to "rob Peter and pay Paul," and not as an honest venture capital investment.

16. Godshall challenges the Agreement's validity on ambiguity grounds. In at least two regards, the Agreement is invalid because (i) the stated math is not correct and is not subject to any reasonably definite meaning, and (ii) it contains inconsistent and contradictory language addressing essential terms. For example, in Section II. 2., the Agreement states, "Assignor hereby transfers and assigns 1.25 percent (1.67%) [sic] Interest (or 1.25 Units)." In the Agreement's Recital B, it states, "The Assignor desires to assign 1.67% of his 66% Interest in the Partnership (or 1.25 Units) to the Assignee". Not only do the various terms used – "Units", "percent interest", "percent of Carry", "percent of the LP fund", and "1.67% of his 66%" – address different concepts, but together they make the Agreement unintelligible and unenforceable. In any event, the clause describing the to-be-purchase interest as "1.67% of his 66%" working out to "1.25 Units" does not work out mathematically either way – whether one assumes that Murphree's original 'ownership of MVP-GP V' was either 66% of (a) the "20%" or (b) the "100%". In the former case, "1.67% of his 66%" of 20 Units would be equal to 0.2204 Units. And in the latter case, "1.67% of his 66%" of 100 Units would be equal to 1.1022 Units. In neither case does the math work out to the Agreement's stated "1.25 Units" (or 1.67 Units).

17. In a telephone call in February 2013, Murphree once again promised Godshall that he would pay Godshall back the money he gave him, with interest, "within a month, by March 4, 2013." But Murphree instead used that time to retain counsel and file this lawsuit.

18. All of Murphree's promises, including the original representations, the prospectus taken in concert with, the subsequent acts, including but not limited to, the promise to pay "carry" and the numerous and continued promises, putting Godshall off into the future, pawning him off on Stephens, specific promises to pay him in the future, including "within a month, by March 4, 2013" in light of the complete and consistent inaction, as well as, Murphree's actions in hiring legal counsel instead of fulfilling his promise to pay demonstrate that Murphree never intended to keep up his end of the bargain, including back at the outset of this financial transaction. Such facts demonstrate that Murphree never intended to fulfill his promises while inducing Godshall to invest and loan Murphree money.

## CAUSES OF ACTION

### Fraudulent Inducement

19. Godshall incorporates and reiterates all previous factual allegations as if spelled out herein for all purposes. At the outset, in or about April, and specifically April 30, 2001 both through personal statements and prospectus in writing, Murphree made false representations regarding material facts of this transaction, and the financial obligations from Murphree to Godshall, as well as the payment of interest and carry on the interest sold. Murphree knew these statements and promises were false, or made recklessly without knowledge of their truth or veracity with the intent, design and purpose of inducing Godshall to rely on same in order to execute the Partnership Assignment Agreement. Godshall relied on the false representations by entering the

agreement and paying $87,500 to Murphree.  As a result, Godshall justifiably relied on same as Murphree was in control of the GP and had superior knowledge of the transaction.  Goshall has suffered in an amount exceeding the minimum jurisdictional limits of this Court. He is entitled to recover his actual damages, pre-judgment interest since the date of the investment, and exemplary damages for the fraud perpetrated by Murphree to induce the investment against him and others.

Breach of Fiduciary Duty

20.     Godshall incorporates and reiterates all previous factual allegations as if spelled out herein for all purposes.  As a manager of the general partner entity and as the alter ego of Greenbay, Murphree owed Godshall a fiduciary duty of loyalty and care with respect to his involvement in the partnership. Murphree breached those duties by making misrepresentations at the outset while failing to keep Godshall's best interest at the fore, as the transaction was predicated upon seeking monies for himself.  Murphree sold and assigned a partnership interest to Godshall; such a transaction is between two partners. In such a transaction, especially in light of Murphree's position as a majority GP interest holder, Murphree owed a fiduciary duty to Godshall.  Murphree's misrepresentations, obfuscation, and likewise failure to present all the facts known to him demonstrate Murphree's breach of his fiduciary duty.  Murphree further acted outside the bounds of reason as a fiduciary by placing his own best interest continually above that of Godshall's interest in the fund and this transaction.  Murphree withheld payments due and owing in deference to himself.  Murphree self-dealt by taking monies personally, while refusing to

pay the afore agreed monies as outlined in the agreement, and represented personally by Murphree. Murphree continued to obfuscate and hide his real agenda until March of 2011. As a result, Godshall has suffered damages in an amount exceeding the minimum jurisdictional limits of this Court. He is entitled to recover his actual damages, pre-judgment interest since the date of the investment, and exemplary damages for the malice perpetrated by Murphree to induce the investment from Godshall and others.

## Constructive Trust/Unjust Enrichment

21. Godshall incorporates and reiterates all previous factual allegations as if spelled out herein for all purposes. Godshall seeks imposition of a constructive trust with regard to the $87,500 invested by Godshall. Murphree obtained Godshall's investment through actual fraud, and has breached a fiduciary duty owed to Godshall during the pendency of the relationship as spelled out more specifically herein above. Murphree has been unjustly enriched by Godshall's investment and loan to Murphree to Murphree's personal benefit. Murphree pocketed monies on the promise of repayment from carry. Murphree has benefited while take any and all actions necessary to thwart the repayment of same, and/or Godshall's interest in recovering the "carry" assigned. That investment is traceable to an identifiable *res.* Imposition of a constructive trust would be equitable under the circumstances.

## Texas Blue Sky Violations

22. Godshall incorporates and reiterates all previous factual allegations as if spelled out herein for all purposes. By selling a security to Godshall by means of an

9

untrue statement of material fact or an omission to state a material fact necessary to make the statements made in the light of the circumstances under which they were made not misleading, Murphree violated the Texas Blue Sky Laws governing the sale of securities. TEX. REV. CIV. STAT. ANN. art. 581-33, § A(2) (Vernon 2005). Godshall is entitled to rescission of the transaction and a return of his investment, interest at the legal rate from the date of tender, his costs, and his reasonable attorney's fees.

## Rescission

23. Godshall incorporates and reiterates all previous factual allegations as if spelled out herein for all purposes. In the alternative, Murphree sold a partial interest in his general partner interest in the limited partnership to Godshall under circumstances that entitle Godshall to rescind the transaction, as set out more fully above, including fraud (fraud in the inducement of the investment, and unjust enrichment). Further, the Agreement is not valid because it presents ambiguous and contradictory language on essential terms. Finally, recission is proper because of Murphree's active obfuscation and continued misrepresentation and promise "to pay" up to and including the date Murphree filed suit attempting to "get out" of his obligations. Godshall is entitled to rescission of the transaction and a return of his investment, including interest at the legal rate from the date of tender.

## PRAYER

Defendant Ned A. Godshall respectfully requests that this Court award him his actual damages, including special damages and consequential damages, exemplary

damages, attorney's fees, prejudgment and postjudgment interest, and any other and further relief to which he may be entitled.

> Respectfully Submitted,
>
> **PATTERSON PC**
>
> */s/ Pete T. Patterson*
> **Pete T. Patterson**
> TBN: 15603580
> 4309 Yoakum Blvd., Suite 2000
> Houston, Texas 77006
> Telephone: (713) 874-6444
> Facsimile: (713) 874-6445
> Email: pete@pyllp.com
>
> ATTORNEY IN CHARGE FOR
> DEFENDANT, NED A. GODSHALL

## CERTIFICATE OF SERVICE

This is to certify that on January 31, 2014, a true and correct copy of the foregoing instrument has been served on the attorneys registered in this matter through the Court's ECF filing system, including:

**Charles R. Parker**
**Anna G. Rotman**
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
713.632.8000 (Ph)
713.632.8002 (Fax)

> */s/ Pete T. Patterson*
> Pete T. Patterson