IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DENNIS E. MURPHREE,              §
                                 §
            Plaintiff,           §
                                 §
v.                               §      CIVIL ACTION NO. H-13-0453
                                 §
NED A. GODSHALL,                 §
                                 §
            Defendant.           §

## MEMORANDUM OPINION AND ORDER

This action was filed on February 20, 2013, by plaintiff, Dennis E. Murphree ("Murphree"), against defendant, Ned A. Godshall ("Godshall"), for declaratory judgment regarding the parties' rights, obligations, and status under a Partnership Interest Assignment ("PIA"). Pending before the court are Murphree's Second Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 9(b) (Docket Entry No. 40), Godshall's Alternative Motion for Leave to Amend Counterclaim Under Rule 15(a) (Docket Entry No. 42), and Plaintiff Dennis E. Murphree's Motion for Summary Judgment ("Murphree's MSJ") (Docket Entry No. 46). For the reasons stated below Murphree's motion to dismiss will be granted in part and denied in part, Godshall's alternative motion to amend will be denied, Murphree's motion for summary judgment will be granted in part and mooted in part, and the court will enter a declaratory judgment that the PIA contains all of the terms between the parties relating thereto.

## I.  Factual and Procedural Background

On or about May 3, 2001, Murphree and Godshall entered into a PIA pursuant to which Murphree assigned to Godshall a small portion of Murphree's interest in a Delaware limited partnership known as MVP-GP V, L.P. ("the Partnership").[1]   In exchange for the assignment of interest, Godshall paid Murphree $87,500.00.[2]   The assignment was approved by the Partnership's General Partner, Greenbay Ventures II, LLC ("Greenbay"), a Texas limited liability company with three members:  Murphree, Thomas J. Stephenson, and David M. Lee.   The approval states:

> Pursuant to the terms of the Agreement of Limited Partnership of MVP-GP, L.P., Greenbay Ventures II, LLC, a Texas limited liability company, as the General Partner of MVP-GP V, L.P., hereby approves the assignment of 1.25 Units in the Partnership to Ned A. Godshall and Ned A. Godshall becoming a substitute Regular Limited Partner for such Interests.  Ned A. Godshall as of the Effective Date shall be a Regular Limited Partner in the Partnership."[3]

Godshall has not received a payout on his Partnership interest.

Murphree alleges that

> beginning on February 4, 2013, defendant Godshall sent Murphree a series of communications . . . related to his

_____

[1]See Plaintiff's Amended Complaint for Declaratory Judgment ("Amended Complaint"), Docket Entry No. 39, p. 2 ¶ 6; Defendant's First Amended Counterclaim ("Amended Counterclaim"), Docket Entry No. 38, p. 2 ¶ 4.  See also PIA, Exhibit A to Murphree's MSJ, Docket Entry No. 46-2.

[2]PIA, Exhibit A to Murphree's MSJ, Docket Entry No. 46-2, p. 1 ¶ II.2.

[3]See id. at 3.

ownership interest which he apparently believes entitles him to hundreds of thousands of dollars from Murphree. In his communications, defendant Godshall has also threatened to initiate litigation against plaintiff Murphree."[4]

On February 20, 2013, Murphree filed this action under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, seeking a declaration and judgment that the PIA

contains all of the terms between the parties relating to the assignment of the Transferred Interest, that the payment for the Transferred Interest was an investment, not a loan; and that there are no terms, conditions, warranties or representations except as set forth in the Partnership Interest Assignment.[5]

Murphree's original complaint contained a prayer for attorneys' fees,[6] but Murphree's amended complaint filed on February 14, 2014, does not contain a prayer for attorneys' fees.[7]

On August 26, 2013, Godshall filed Defendant's Original Counterclaim (Docket Entry No. 20), asserting claims against Murphree for fraudulent inducement, breach of fiduciary duty, constructive trust/unjust enrichment, violations of the Texas Blue Sky Laws, and rescission. On September 20, 2013, Murphree filed a motion to dismiss Godshall's counterclaims pursuant to Federal

---

[4]Amended Complaint, Docket Entry No. 39, p. 3 ¶ 12.

[5]Plaintiff's Complaint for Declaratory Judgment ("Plaintiff's Complaint"), Docket Entry No. 1, p. 4 ¶ 15; Amended Complaint, Docket Entry No. 39, pp. 3-4 ¶ 14.

[6]Plaintiff's Complaint, Docket Entry No. 1, pp. 4-5 ¶ 16 and Prayer for Relief.

[7]See Amended Complaint, Docket Entry No. 39.

Rules of Civil Procedure 9(b) and 12(b)(6) (Docket Entry No. 22). At the Initial Pretrial and Scheduling Conference held on January 17, 2014, the court granted in part and denied in part Murphree's motion to dismiss Godshall's counterclaims after concluding that Godshall's allegations of fraud failed to satisfy the requirements for pleading fraud established by Federal Rule of Civil Procedure 9(b).[8]  The court granted Godshall leave to file an amended counterclaim by January 31, 2014,[9] and granted Murphree leave to file an amended complaint by February 14, 2014.[10]

On January 31, 2014, Godshall filed his Amended Counterclaim (Docket Entry No. 38) reasserting claims against Murphree for fraudulent inducement, breach of fiduciary duty, constructive trust/unjust enrichment, violation of the Texas Blue Sky Laws, and rescission.[11]  On February 14, 2014, Murphree filed his Amended Complaint (Docket Entry No. 39), and the pending motion to dismiss Godshall's Amended Counterclaim.[12] On June 20, 2014, Murphree filed the pending motion for summary judgment.[13]  Godshall has responded

---

[8]Hearing Minutes and Order, Docket Entry No. 36.

[9]Id.

[10]Docket Control Order, Docket Entry No. 37.

[11]Amended Counterclaim, Docket Entry No. 38, pp. 7-10 ¶¶ 19-23.

[12]Murphree's Second Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 9(b) ("Second Motion to Dismiss"), Docket Entry No. 40.

[13]Murphree's MSJ, Docket Entry No. 46.

to Murphree's motion to dismiss,[14] and to Murphree's motion for summary judgment.[15]

## II.   **Plaintiff's Second Motion to Dismiss Counterclaims**

Murphree argues that all of Godshall's counterclaims should be dismissed because they are time-barred.  Murphree also argues that Godshall's counterclaim for fraudulent inducement should be dismissed because it lacks the particularity that Rule 9(b) requires for pleading causes of action based on fraud.[16]  Godshall responds that Murphree's motion to dismiss should be denied because Godshall's counterclaim for fraudulent inducement meets the pleading requirements of Federal Rules of Civil Procedure 8 and 9(b), and because pursuant to Texas Civil Practice & Remedies Code § 16.069, none of his counterclaims are time barred.  Alternatively, Godshall argues that the court should grant his motion for leave to amend.[17]

---

[14]Ned A. Godshall's Response to Dennis Murphree's Second Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b) (Doc. #41) ("Godshall's Response to Second Motion to Dismiss"), Docket Entry No. 42.

[15]Ned A. Godshall's Response to Dennis Murphree's Motion for Summary Judgment ("Godshall's Response to Murphree's MSJ"), Docket Entry No. 47, p. 1.

[16]Second Motion to Dismiss, Docket Entry No. 40.

[17]Godshall's Response to Second Motion to Dismiss, Docket Entry No. 42, p. 6.

-5-

**A.    Standards of Review**

   1.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966). "The court's review is

limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).

2. Federal Rule of Civil Procedure 9(b)

Godshall's counterclaim for fraudulent inducement is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 207 (5th Cir. 2009) (quoting Williams v. WMX Technologies, Inc., 112 F.3d 175, 177 (5th Cir.), cert. denied, 118 S. Ct. 412 (1997)). See also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.") (quoting Williams, 112 F.3d at 179).

"A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." <u>Southland Securities Corp. v. INSpire Insurance Solutions, Inc.</u>, 365 F.3d 353, 361 (5th Cir. 2004) (citing <u>Shushany v. Allwaste, Inc.</u>, 992 F.2d 517, 520 (5th Cir. 1993)).

**B.    Analysis**

1.   <u>Godshall's Counterclaims Are Not Time-Barred</u>

Murphree argues that all of Godshall's counterclaims are time barred and are not revived under Texas Civil Practices & Remedies Code § 16.069 because the Amended Complaint that he filed on February 14, 2014, contains no claim for affirmative relief.[18] Godshall argues his counterclaims are not time-barred because they were timely filed under § 16.069 in response to Murphree's Original Complaint, and cannot be extinguished by Murphree's abandonment of his claim for affirmative relief in an Amended Complaint. Alternatively, Godshall argues that "[t]he fund closed with no payout to Godshall on or about May 3, 2011[,] so Godshall's claims that fall within the applicable statutes of limitation survive Murphree's motion to dismiss."[19]

---

[18]Murphree's Memorandum Supporting His Second Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 9(b) ("Memorandum in Support of Second Motion to Dismiss"), Docket Entry No. 41, pp. 15-18.

[19]Godshall's Response to Second Motion to Dismiss, Docket Entry No. 42, p. 20.

Texas Civil Practices and Remedies Code § 16.069 provides:

(a)   If a counterclaim or cross claim arises out of the
      same transaction or occurrence that is the basis of
      an action, a party to the action may file the
      counterclaim or cross claim even though as a
      separate action it would be barred by limitation on
      the date the party's answer is required.

(b)   The counterclaim or cross claim must be filed not
      later than the 30th day after the date on which the
      party's answer is required.

"Where the requirements of the statute are met, section 16.069

allows those who are already parties to the action to assert claims

against one another that would otherwise be time-barred."

J.M.K. 6, Inc. v. Gregg & Gregg, P.C., 192 S.W.3d 189, 199 (Tex.

App. — Houston [14th Dist.] 2006, no pet.).   "The statute is a

savings clause, 'intended to prevent a plaintiff from waiting until

an adversary's valid claim arising from the same transaction was

barred by limitations before asserting his own claim.'"   Pitts &

Collard, L.L.P. v. Schechter, 369 S.W.3d 301, 323-24 (Tex. App. —

Houston [1st Dist.] 2011, no pet.) (quoting Hobbs Trailers v. J.T.

Arnett Grain Co., 560 S.W.2d 85, 88 (Tex. 1977) (interpreting

predecessor statute substantially similar to § 16.069)).   See also

Oliver v. Oliver, 889 S.W.2d 271, 273 (Tex. 1994) (recognizing that

§ 16.069 prevents a party from postponing the filing of a claim

until an adversary's claim is barred by limitations).

There is no dispute that Godshall filed his counterclaims

within thirty days of when his original answer was due.  Godshall's

stipulated answer date was August 1, 2013 (Docket Entry No. 17),

and Godshall filed his counterclaims on August 26, 2013, twenty-
five days later (Docket Entry No. 20).  Nor is there any dispute
that Godshall's counterclaims arise out of the same transaction or
occurrence that underlies the Murphree's suit for declaratory
judgment, i.e., execution of the PIA.  See Wells v. Dotson, 261
S.W.3d 275, 281 (Tex. App. — Tyler 2008, no pet.) (recognizing that
to determine what constitutes a "transaction" under § 16.069, Texas
courts "employ the logical relationship test, which asks whether
the essential facts on which the claims are based are significantly
and logically relevant to both claims").  Nevertheless, citing
Holman Street Baptist Church v. Jefferson, 317 S.W.3d 540 (Tex.
App. — Houston 2010, pet. denied), and Ball v. SBC Communications,
Inc., No. 04-02-00702-CV, 2003 WL 21467219 (Tex. App. — San Antonio
2003, pet. denied), Murphree argues that Godshall's counterclaims
should be dismissed because § 16.069 does not revive time-barred
counterclaims where the plaintiff seeks only declaratory judgment
and "Murphree's Amended Complaint seeks a declaratory judgment and
does not seek any affirmative relief."[20]  Acknowledging that he
sought affirmative relief in his Original Complaint, Murphree
argues that his "amended complaint seeks no affirmative relief,

_____

[20]Memorandum in Support of Second Motion to Dismiss, Docket
Entry No. 41, p. 18.  See also Plaintiff's Reply in Support of His
Second Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 9(b)
("Plaintiff's Reply in Support of Second Motion to Dismiss"),
Docket Entry No. 43, pp. 2-4.

thereby removing defendant's counterclaims from the shelter of § 16.069."[21]

In Jefferson, 317 S.W.3d at 545, the court observed that "[c]ourts have interpreted section 16.069 as permitting a party's otherwise time-barred counterclaims or cross claims only when the opposing party has sought 'affirmative relief,' rather than just a declaration on a dispute between the parties."  Although like Murphree, the plaintiff in Jefferson amended his complaint to remove his originally asserted claim for attorney's fees in an effort to prevent defendant from relying on § 16.069 to assert otherwise time-barred counterclaims, Murphree's reliance on Jefferson is misplaced because there the court stated, "[w]e do not opine on whether affirmative claims that were abandoned before or during trial fulfill the requirements of Sec. 16.069(a)."  Id. at 546.

In Ball, 2003 WL 21467219, the plaintiff also amended his complaint to remove a claim for affirmative relief, but the court did not rely on the plaintiff's abandonment of its claim for affirmative relief in reaching its conclusion that § 16.069 did not revive defendant's time-barred counterclaims.  Instead, the court held that "section 16.069 of the Texas Civil Practice and Remedies Code does not revive or save claims brought by a party as counterclaims in a suit for declaratory judgment which alleges that

_____

[21]Plaintiff's Reply in Support of Second Motion to Dismiss, Docket Entry No. 43, p. 2.

such claims are absolutely barred by limitations as a matter of law." Ball, 2003 WL 21467219, *6.  The court explained that

> [w]ere we to hold that section 16.069 revives claims which are absolutely barred by limitations as a matter of law, the result would be that a litigant would never be able to seek a declaratory judgment based on limitations because a defendant could always use section 16.069 to defeat such a suit. . .

> . . . [W]ere we to hold that section 16.069 revives claims which are absolutely barred by limitations as a matter of law, we would be reading into the Uniform Declaratory Judgments Act a provision that would make such actions fruitless. . . [W]e conclude that the particular construction advocated by Ball would be unjust and unreasonable. . .

Id. at *4.  In other words, the Ball court held that "if a plaintiff files an action seeking only a declaration that the defendant would be barred by a statute of limitations if it chose to bring a particular cause of action, the defendant could not use § 16.069 to then bring the otherwise time-barred cause of action." Jefferson, 317 S.W.3d at 545 (citing Ball, 2003 WL 21467219, at *4).  Because Murphree did not file this action seeking declaratory judgment that Godshall's claims are time-barred, and because the Jefferson court expressly declined to address the issue before this court, Jefferson and Ball are both distinguishable.

Even assuming without deciding that filing an amended complaint that abandons a claim for affirmative relief will deprive a defendant of the ability to rely on § 16.069 to revive otherwise time-barred claims, the court concludes that Godshall's counterclaims should not be dismissed on that basis under the facts

-12-

of this case. Although the Docket Control Order gave Murphree the
ability to file an amended complaint by February 14, 2014,[22] the
Hearing Minutes and Order entered therewith required Godshall to
file an amended counterclaim by January 31, 2014.[23] Murphree was
therefore able to wait until after Godshall filed his Amended
Counterclaim to file his Amended Complaint. Although it is a close
question, the court concludes that to dismiss Godshall's
counterclaims based on Murphree's abandonment of his claim for
affirmative relief in the amended complaint that he filed after
Godshall had filed his Amended Counterclaim in reliance on § 16.069
would impose upon Godshall a harm analogous to the harm that
§ 16.069 is intended to prevent. See Pitts & Collard, 369 S.W.3d
at 323-24 (recognizing that § 16.069 is a savings clause, "intended
to prevent a plaintiff from waiting until an adversary's valid
claim arising from the same transaction was barred by limitations
before asserting his own claim") (quoting Hobbs, 560 S.W.2d at 88).

Asserting that "[t]he fund closed with no payout to Godshall
on or about May 3, 2011,"[24] Godshall argues that "[w]ith the May 3,
2011, accrual date, the only claim that would arguably fall outside
the applicable statute of limitations is Godshall's claim for

---

[22]Docket Entry No. 37.

[23]Docket Entry No. 36.

[24]Godshall's Response to Second Motion to Dismiss, Docket Entry
No. 42, p. 20.

-13-

unjust enrichment, which is governed by a two year period."[25]
Although Murphree has filed a reply in support of his second motion
to dismiss (Docket Entry No. 43), he has not responded to
Godshall's contention that the counterclaims asserted in this
action did not accrue until May 3, 2011.  Accordingly, Murphree's
motion to dismiss Godshall's counterclaims will be denied.

### 2.   Godshall's Fraudulent Inducement Counterclaim Fails to Satisfy the Rule 9(b) Pleading Requirements

Murphree argues that Godshall's cause of action for fraudulent
inducement should be dismissed under Rule 12(b)(6) because Godshall
has failed to satisfy Rule 9(b)'s requirements for pleading fraud
with particularity.[26]  Godshall responds that his "counterclaims
plainly answer the 'who, what, where, when, and how' of the
fraudulent representations."[27]

### (a)   Applicable Law

"Texas law has long imposed a duty to abstain from inducing
another to enter into a contract through the use of fraudulent
misrepresentations.  As a rule, a party is not bound by a contract
procured by fraud."  Formosa Plastics Corporation USA v. Presidio

---

[25]Id. at n.3.

[26]Memorandum in Support of Second Motion to Dismiss, Docket
Entry No. 41, pp. 10-14.

[27]Godshall's Response to Second Motion to Dismiss, Docket Entry
No. 42, pp. 7-8.

Engineers & Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998). "Moreover, it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." Id. Texas law has also long "recognized that a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract." Id. (citing Crim Truck & Tractor Co. v. Navistar International Transportation Corp., 823 S.W.2d 591, 597 (Tex. 1992)).

To state a claim for fraudulent inducement under Texas law a party must allege all of the elements of fraud in addition to the fact that he entered into a binding agreement as a result of an alleged misrepresentation. Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001) ("Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties."). The elements of fraud are: (1) a material representation; (2) that is false; (3) when the defendant made the representation, the defendant knew it was false or made the representation recklessly without any knowledge of its truth; (4) the defendant intended the plaintiff to rely on the representation, and the plaintiff did rely on the representation; and (5) the defendant's actions caused an injury. Formosa, 960 S.W.2d at 47. See also Kevin M. Ehringer

-15-

Enterprises, Inc. v. McData Services Corp., 646 F.3d 321, 325 (5th Cir. 2011).  "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." Formosa, 960 S.W.2d at 48 (citing Schindler v. Austwell Farmers Coop., 841 S.W.2d 853, 854 (Tex. 1992)).  See also Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986).  "However, the mere failure to perform a contract is not evidence of fraud." Id.  A party alleging fraudulent inducement must meet the heightened pleading requirements of Rule 9(b), i.e., the party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter, 607 F.3d 1029, 1032 (5th Cir. 2010) ("[W]ith respect to the fraud and fraudulent inducement claims, Fed. R. Civ. P. 9(b) requires that [the claimant] 'state with particularity the circumstances constituting the fraud.' Fed. R. Civ. P. 9(b).").

(b)  Application of the Law to Godshall's Allegations

Under the headings "CAUSES OF ACTION" and "Fraudulent Inducement," Godshall alleges:

> Godshall incorporates and reiterates all previous factual allegations as if spelled out herein for all purposes. At the outset, in or about April, and specifically April 30, 2001 both through personal statements and prospectus in writing, Murphree made false representations regarding material facts of this transaction, and the financial obligations from Murphree to Godshall, as well as the payment of interest and carry on the interest sold. Murphree knew these statements and promises were false, or made recklessly without knowledge

of their truth or veracity with the intent, design and purpose of inducing Godshall to rely on same in order to execute the Partnership Assignment Agreement. Godshall relied on the false representations by entering the agreement and paying $87,500 to Murphree. As a result, Godshall justifiably relied on same as Murphree was in control of the GP and had superior knowledge of the transaction.[28]

Murphree argues

Godshall's allegation that "Murphree made false representations regarding material facts . . . with the intent, design and purpose of inducing Godshall to rely on same in order to execute the Partnership Assignment Agreement," Amended Counterclaim at ¶19, fails to allege the particular time and place of the false representation[s] or set forth any specific facts to support an inference of fraud.[29]

. . . Godshall's only attempt to add the requisite particularity appears in Paragraph 4 where he alleges that in "April and May of 2001, Murphree and Stephenson made specific representations to Godshall . . ." He then references "a prospectus, a letter, and the agreements themselves," claiming they were written by "Murphree and Stephenson." His pleading jumbles three alleged documents and two alleged authors over a two-month time span and fails to specify what representations in any of these documents provide the basis for Godshall's claim.

. . .

Because Godshall's fraudulent inducement claim only consists of a recitation of the cause of action and the allegations in the Factual Background are vague as to the time, place, and circumstances surrounding the statements, this claim must be dismissed under Rule 9(b).[30]

---

[28]Amended Counterclaim, Docket Entry No. 38, pp. 7-8 ¶ 19.

[29]Memorandum in Support of Second Motion to Dismiss, Docket Entry No. 41, pp. 10-11.

[30]Id. at 11-12.

Citing ¶¶ 4-14, 17-18 of the Amended Counterclaim, Godshall responds that his fraudulent inducement counterclaim is adequate under Rule 9(b).[31]  Godshall argues that

> [t]he "who" and "what" constitute the various representations made by Murphree and/or Stephenson recounted . . . in the Amended Complaint.  Murphree made representations that;  1) Godshall's money would be treated as a loan, 2) that he would pay interest, 3) the valuation of the fund, 4) he would eventually pay Godshall back, and 5) his continued fraudulent pattern of promising payment. . . . The "when" was "repeatedly over the course of the ten-year life of the fund and afterwards, including within weeks of hiring counsel and suing Godshall" and "in a telephone call in February 2013." . . . The "where" and "how" refer to the false representations "throughout . . . the transaction", telephone calls, a written prospectus, and in-person meetings "on several occasions".[32]

Having carefully considered the Amended Counterclaim, the court concludes that Godshall's allegations fail to satisfy the heightened requirements necessary to plead fraud.  The representations alleged in ¶¶ 13-14, 17, and 18 are not capable of supporting Godshall's fraudulent inducement counterclaim because the representations alleged in those paragraphs are all alleged to have been made long after Godshall executed the PIA in May of 2001 and, therefore, could not have induced Godshall to enter into the PIA.[33]

---

[31]Godshall's Response to Second Motion to Dismiss, Docket Entry No. 42, p. 9.

[32]Id. at 10-11.

[33]See Amended Counterclaim, Docket Entry No. 38, pp. 4-7 ¶¶ 13-14, 17, and 18 (describing representations Murphree allegedly made **after** Godshall and Murphree had executed the PIA, e.g., ¶ 13 where
(continued...)

-18-

Godshall's allegations of fact regarding statements that Murphree made before the PIA was executed fail to satisfy Rule 9(b)'s pleading requirements because Godshall fails "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." <u>Flaherty</u>, 565 F.3d at 207 (quoting <u>Williams</u>, 112 F.3d at 177).

In ¶ 4 of the Amended Counterclaim Godshall alleges that

> [i]n April and May of 2001, Murphree and Stephenson made specific representations to Godshall related to an investment in their MVP GP, V, LP and MVP V, LP. These were made in writing through a prospectus, a letter, and the agreements themselves. Same are attached hereto as exhibits 1, 2, and 3. Although too many representations are made to recount herein verbatim, the initial letter (exhibit 1) makes many representations of investments, liquidity, and the sale of some of Murphree's "interest in Fund V now for a very attractive price." Murphree then pegs the value at $87,500.00 per quarter point, and states that even at the current raise, the value is 5X to 7.5X. The fund never approached any such valuation.[34]

Although the First Amended Counterclaim refers to the prospectus, letter, and agreement that contain false representations made by Murphree and Stephenson attached to the Amended Counterclaim "as exhibits 1, 2, and 3,"[35] the referenced documents are not attached

---

[33](...continued)
Godshall alleges that Murphree affirmed the promise to pay back the money Godshall had given him "over the course of the ten-year life of the fund and afterwards, including within weeks of hiring counsel and suing Godshall").

[34]Amended Counterclaim, Docket Entry No. 38, p. 2 ¶ 4.

[35]<u>Id.</u>

to either the original or the amended counterclaim filed with the court. Moreover, Godshall fails to specify which representations in the prospectus, letter, or agreement were false or why they were false, fails to allege which representations Murphree knew were false when he made them or that he made them with reckless disregard to their truth or falsity; fails to allege where Murphree provided Godshall documents containing false representations; and also fails to allege which of the representations made in these documents induced Godshall to execute the PIA. Absent the actual representations in the prospectus, letter, and PIA, and the contexts in which those representations were made and the documents provided to Godshall, Godshall's allegations regarding those representations fail to satisfy Rule 9(b)'s requirements for pleading fraud.

> In ¶ 6 of the Amended Counterclaim Godshall alleges that
>
> Murphree represented that the 80% limited partnership [MVP-V, LP] interest would be sold to limited partners to generate $120 million. The agreement further represented that Godshall's interest in this investment would be worth more than $1 Million at payout. Instead, the fund was closed in 2011 and Godshall received nothing, not a penny. Not even []his principal.[36]

Godshall alleges that Murphree represented that the 80% limited partnership interest would be sold to limited partners to generate $120 million and that his interest in the investment would be worth more than $1 million at payout, but Godshall fails to specify when,

---

[36]<u>Id.</u> at 2-3 ¶ 6.

where, how, or in what context Murphree made these alleged
representations.   Moreover, Godshall has neither alleged that
Murphree knew the alleged representations were false when he made
them, nor alleged that these representations induced him to execute
the PIA.

In ¶¶ 9-10 and 12 of the Amended Complaint, Godshall alleges

9.  Murphree made numerous false representations to
    induce Godshall into executing the Partnership
    Interest Assignment that forms the basis of
    Murphree's claims.  Murphree told Godshall that the
    partnership would comprise a greater than $100
    million fund that would be actively managed by
    Murphree and Stephenson;  neither of those
    representations was true.

10. Murphree and Stephenson sent Godshall a written
    prospectus, met with Godshall in person, and told
    Godshall the investment would multiply in value (5X
    to 7.5X) over the ten-year life of the fund; that
    was not true, either.  Murphree reduced some of
    these representations to writing in a prospectus
    for the investment which he gave Godshall,
    intending Godshall to rely upon same in purchasing
    the portion of Mur[ph]ree's interest, as well as,
    the interest carry Godshall was to receive.

                              . . .

12. Murphree represented to Godshall that the money
    Godshall invested was supposed to be "put to work"
    as part of the larger investment vehicle but it
    simply was not.  Instead, Murphree effectively took
    Godshall's 'investment' as an advance on the fund's
    success (which never came) and then failed to
    follow through with the representations he made
    about the partnership and the fund.  He failed to
    pursue the limited partner investment on the scale
    that he represented to Godshall and failed to
    actively manage the assets that were invested in
    the fund.[37]

---

[37]Id. at 3-4 ¶¶ 9-12.

Missing from the Amended Counterclaim are any allegations of fact capable of establishing when, where, or how Murphree made the representations described in ¶¶ 9-10 and 12 of the Amended Counterclaim.  Also missing are allegations of fact capable of establishing that Murphree knew the representations were false when he made them, or that Murphree made the representations with reckless disregard to their truth or falsity.  Instead, Godshall alleges that Murphree "failed to pursue the limited partner investment on the scale he represented to Godshall," and that Murphree "failed to actively manage the assets that were invested in the fund."[38]  But Godshall neither alleges that Murphree made the representations described in ¶¶ 9-10 and 12 without intent to follow through with them, nor alleges that Murphree entered into the PIA without intent to comply with it.  A promise to act in the future constitutes fraud only when made with the intention, design, and purpose of deceiving, and with no intention of performing the act.  Formosa, 960 S.W.2d at 48; Spoljaric, 708 S.W.2d at 434.  Instead of alleging facts capable of constituting even "slight circumstantial evidence" of intent to defraud, Godshall's claim for fraudulent inducement is based on his contention that Murphree failed to follow through on the scale represented, not that Murphree failed to follow through at all.  Godshall's claim for fraudulent inducement is therefore belied by his own allegations of

---

[38] Id. at 4 ¶ 12.

fact, which recognize Murphree's partial performance. Godshall's allegations that Murphree merely failed to follow through on the scale represented thus negate his claim for fraudulent inducement. See IKON Office Solutions, Inc. v. Eifert, 125 S.W.3d 113, 124 (Tex. App. — Houston [14th Dist.] 2003, pet. denied) ("Partial performance can negate an intent not to keep a promise at the time it was made.").

Nor has Godshall alleged that the representations described in ¶¶ 9-10 and 12 induced him to execute the PIA.

In ¶¶ 11 and 15 Godshall alleges:

> 11.  Moreover, at the time of the "investment" Murphree failed to disclose that Murphree had personal financial difficulties in fact needed the money from Godshall for his own purposes. Murphree basically took Godshall's money and pocketed same as a personal loan.[39]

. . .

> 15.  Upon information and belief, Murphree was having financial difficulties in the timeframe when he induced Godshall to provide him the funds. Murphree induced Godshall, Leslie Moore, and others to make similar "investments" into MVP-GP V so that he could use the funds to "rob Peter and pay Paul," and not as an honest venture capital investment.[40]

Godshall alleges that Murphree failed to disclose that he had personal financial difficulties and needed the money from Godshall for his own purposes, but Godshall has not alleged that he would not have executed the PIA had he known of Murphree's financial

---

[39]Id. ¶ 11.

[40]Id. at 4 ¶ 11, 5 ¶ 15.

difficulties.[41]  Because the Amended Counterclaim lacks allegations of fact capable of proving that the omission alleged in ¶¶ 11 and 15 played any role in Godshall's decision to enter into the PIA, Godshall has failed to allege facts capable of proving that the omission alleged is actionable under Texas law.

Read collectively, the factual allegations in Godshall's Amended Counterclaim fail to identify with particularity as required by Rule 9(b) any false representations or omissions that induced him to execute the PIA.  Godshall's allegations of fact also fail to identify with the requisite particularity when, where, or how any allegedly false representation was made.  Nor has Godshall alleged facts capable of establishing that any allegedly false representation or omission induced him to enter into the PIA. Accordingly, the court concludes that the counterclaim for

---

[41]The notion that Godshall relied on the omission alleged in ¶ 11 of the Amended Counterclaim is belied by the text of the letter that Godshall alleges contained representations that induced him to execute the PIA.  There Murphree plainly states:

> I need a small cash infusion now to allow me to do productive work without having to worry about paying the bills while we raise Fund V. . .

> . . . As an "insider" on virtually everything we do, most of my stocks from recent sales, mergers and IPO's are in lengthy lock-ups so I can't sell or pledge many of them, particularly with stock prices where they are today. It's interesting to me to have a very decent net worth right now but to be in a cash crunch . . . but we are where we are.

Letter, Exhibit B to Murphree's MSJ, Docket Entry No. 46-3, p. 1. See below, § IV.B.2(a).

-24-

fraudulent inducement as alleged against Murphree must be dismissed for failure to meet the heightened pleading requirement of Rule 9(b).[42]

### III.  Godshall's Alternative Motion for Leave to Amend

At the end of his response in opposition to Murphree's second motion to dismiss, Godshall states "[i]f the Court determines that Godshall's fraud counterclaim does not meet the requirements of Rule 9(b) or Rule 12(b)(6), Godshall respectfully requests 30 days to amend the counterclaim."[43] Murphree argues that Godshall's alternative motion for leave to amend should be denied because Godshall has already had one opportunity to amend, and an additional opportunity to amend would be futile.

Leave to amend should be freely granted when justice requires. Fed. R. Civ. P. 15(a). Although under Rule 15(a) there is a strong presumption in favor of granting leave, leave to amend is not automatic. Financial Acquisition Partners, LP v. Blackwell, 440 F.3d 278, 291 (5th Cir. 2006). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed

---

[42]For the reasons stated below in § IV.B.2(a), the court also concludes that Murphree is entitled to summary judgment on Godshall's fraudulent inducement counterclaim.

[43]Godshall's Response to Second Motion to Dismiss, Docket Entry No. 42, p. 21.

amendment." <u>United States ex rel. Steury v. Cardinal Health, Inc.</u>, 625 F.3d 262, 270 (5th Cir. 2010) (citing <u>Rosenblatt v. United Way of Greater Houston</u>, 607 F.3d 413, 419 (5th Cir. 2010), and <u>Foman v. Davis</u>, 83 S. Ct. 227, 230 (1962)).  Dismissal with prejudice is appropriate if the court finds that the plaintiff has alleged his best case.  <u>Jones v. Greninger</u>, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam).

The court concludes that Godshall's counterclaims should be dismissed without a second opportunity to amend because Godshall has already had one opportunity to amend to satisfy the pleading requirements of Rule 9(b), has alleged his best case, and has merely asked for an additional opportunity to amend without either submitting a proposed second amended complaint or describing what, if any, additional facts, he could add to the facts already alleged.  In response to Murphree's second motion to dismiss, Godshall repeatedly declares the adequacy of his counterclaims, and only seeks leave to amend should the court determine otherwise. Under these circumstances the court concludes that Godshall has pleaded his best case.  <u>See Jacquez v. Procunier</u>, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").  <u>See also Morrison v. City of Baton Rouge</u>, 761 F.2d 242, 248-49 (5th Cir. 1985) ("The plaintiffs were given an opportunity to amend to allege specific conduct . . . in

support of their . . . theories, but failed to do so; we must assume that they were unable in good faith to make such allegations."). Accordingly, Murphree's motion for leave to amend asserted in response to Murphree's second motion to dismiss will be denied.

## IV.   Plaintiff's Motion for Summary Judgment

Murphree moves for summary judgment arguing that he is entitled to summary judgment on his claim for declaratory judgment because (1) the PIA contains an integration clause that precludes the court from considering parole evidence; (2) the parol evidence that Godshall cites in support of his counterclaims does not raise a genuine issue of material fact for trial; and (3) all of Godshall's counterclaims are time-barred.[44] Godshall responds that fact issues preclude granting Murphree's motion for summary judgment, that parole evidence is admissible to prove fraudulent inducement, and that his counterclaims are not time-barred.[45]

### A.   Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

---

[44]Murphree's MSJ, Docket Entry No. 46.

[45]Godshall's Response to Murphree's MSJ, Docket Entry No. 47.

-27-

Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  The
Supreme Court has interpreted the plain language of Rule 56(c) to
mandate the entry of summary judgment "after adequate time for
discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial."   Celotex Corp. v. Catrett, 106
S. Ct. 2548, 2552 (1986).   A party moving for summary judgment
"must 'demonstrate the absence of a genuine issue of material
fact,' but need not negate the elements of the nonmovant's case."
Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)
(en banc) (quoting Celotex, 106 S. Ct. at 2553-2554 (emphasis in
original)).  "If the moving party fails to meet this initial burden,
the motion must be denied, regardless of the nonmovant's response."
Id.  If, however, the moving party meets this burden, Rule 56(c)
requires the nonmovant to go beyond the pleadings and show by
affidavits, depositions, answers to interrogatories, admissions on
file, or other admissible evidence that specific facts exist over
which there is a genuine issue for trial.  Id. (citing Celotex, 106
S. Ct. at 2553-2554).   In reviewing the evidence "the court must
draw all reasonable inferences in favor of the nonmoving party, and
it may not make credibility determinations or weigh the evidence."
Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110
(2000).  Factual controversies are to be resolved in favor of the
nonmovant, "but only when there is an actual controversy, that is,

when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" Id. (quoting Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993)).

**B.   Analysis**

    1.   <u>Motion for Summary Judgment on Declaratory Judgment Claim</u>

Murphree seeks a declaration

    (i)        regarding the parties' rights, obligations, and status under the [PIA];

    (ii)      that the [PIA] contains all of the terms between the parties relating to the assignment of the Transferred Interest, and

    (iii)    that the payment for the Transferred Interest was an investment, not a loan;

    (iv)    that there are no terms, conditions, warranties or representations except as set forth in the [PIA].[46]

Murphree argues that the PIA "contains all of the terms between the parties relating to the assignment of the Transferred Interest."[47] Asserting that the PIA contains an integration clause, and citing Claus v. Gyorkey, 674 F.2d 427, 434 n.5 (5th Cir. 1982), Murphree

_____

[46]Amended Complaint, Docket Entry No. 39, p. 4.   <u>See also</u> Murphree's MSJ, Docket Entry No. 46, p. 8.

[47]Murphree's MSJ, Docket Entry No. 46, p. 9.

argues that even if the parties to a contract previously made oral agreements or representations, "the terms of an oral contract, once reduced to writing, are, under the Texas parole evidence rule, final, and all prior and contemporaneous negotiations, promises, and agreements are presumed to be merged into the written instrument."[48]

The integration clause contained in the PIA provides:

> <u>Entire Agreement</u>.   This Assignment contains all of the
> terms between the parties relating to the assignment of
> the Transferred Interest.   There are no terms,
> conditions, warranties or representations except as set
> forth in this Assignment.   Any addition to or
> modification of this Assignment shall be of no force or
> effect unless in writing and duly executed by the parties
> hereto.[49]

Based on this integration clause, Murphree argues that he is entitled to summary judgment because

> the only admissible summary judgment evidence — the [PIA]
> itself — sets forth all of the necessary information for
> the Court to grant summary judgment for Plaintiff.   There
> is no genuine issue of material fact as to Plaintiff's
> allegations that would prevent the court from granting
> the relief requested.[50]

Citing <u>Dallas Farm Machinery Co. v. Reaves</u>, 307 S.W.2d 233 (Tex. 1957), Godshall responds that the Texas Supreme Court has long held that parole evidence is admissible, even in the face of a merger clause in a written contract, to show that the contract was induced by fraud.   Godshall argues that

---

[48]<u>Id.</u>

[49]PIA, Docket Entry No. 46-2, ¶ II.5(d).

[50]Murphree's MSJ, Docket Entry No. 46, p. 10.

[t]he Fund Solicitation Letter and Godshall's Affidavit
demonstrate that Murphree made a material misrepre-
sentation to Godshall about the fund, its value, and its
earnings potential, and that Godshall relied upon those
misrepresentations to his detriment.   *See* Ex. A,
Solicitation Letter; Ex. B, Affidavit.   The [PIA] into
which both Murphree and Godshall entered created a
fiduciary relationship between the two, as it made them
partners in MVP-GP V, L.P.   *See* Ex. C, Partnership
Assignment.[51]

Murphree does not dispute the admissibility of parole evidence
to prove fraudulent inducement.   Murphree argues instead that even
if parol evidence were permitted, Godshall's counterclaims would
fail because the parole evidence that he seeks to have considered,
i.e., Godshall's affidavit and the fund solicitation letter,
actually contradict Godshall's allegations of fraudulent
inducement.[52]   For the reasons stated below in § IV.B.2, the court
concludes Murphree's motion for summary judgment on his claim for
declaratory judgment should be granted because the parole evidence

---

[51]Godshall's Response to Murphree's MSJ, Docket Entry No. 47,
p. 5.

[52]Murphree's MSJ, Docket Entry No. 46, p. 11 (citing PIA,
Exhibit A, and Fund Solicitation Letter, Exhibit B, Docket Entry
Nos. 46-2 and 46-3, respectively).   Godshall does not dispute that
the exhibits submitted in support of Murphree's MSJ are the PIA and
fund solicitation letter referenced in his Amended Counterclaim.
Godshall's response in opposition (Docket Entry No. 47) references
both a Fund Solicitation Letter attached thereto as Exhibit A, and
a PIA attached thereto as Exhibit C.   But Exhibit A attached to
Godshall's response in opposition is not the Fund Solicitation
Letter provided to him by Murphree but, instead, a letter agreement
pursuant to which Murphree and Company, Inc. engaged Morgan
Keegan & Company, Inc. as its exclusive placement agent in
connection with the Murphree Venture Partners V, L.P., and
Exhibit C attached to Godshall's response in opposition is not the
PIA executed by Murphree and Godshall but, instead, the PIA
executed by Murphree and Leslie Moor.

Godshall cites in support of his counterclaims for fraudulent inducement, breach of fiduciary duty, constructive trust/unjust enrichment, violation of the Texas Blue Sky Laws, and rescission, do not raise genuine issues of material fact for trial.

    2.   <u>Motion for Summary Judgment on Godshall's Counterclaims</u>

        (a)   Fraudulent Inducement

In § II.B.2, above, the court concluded that Murphree's second motion to dismiss Godshall's counterclaim for fraudulent inducement should be granted because Godshall's allegations of fraud failed to satisfy Rule 9(b)'s particularity requirement.  For the reasons stated below, the court concludes alternatively that Murphree is entitled to summary judgment on Godshall's counterclaim for fraudulent inducement because the evidence that Godshall cites in support of his fraudulent inducement claim, i.e., the fund solicitation letter and his own affidavit, is not evidence from which a reasonable jury could conclude that Murphree made any false representations or omissions of material fact.  "[A]n omission or misrepresentation of fact is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding to invest." <u>Highland Capital Management, L.P. v. Ryder Scott Co.</u>, 402 S.W.3d 719, 743 (Tex. App. — Houston [14th Dist.] 2012, no pet.).  <u>See also Basic v. Levinson</u>, 108 S. Ct. 978, 983 (1988).

Godshall alleges that Murphree told him that his investment would increase 5 to 7.5 times in value,[53] but the text of the fund solicitation letter actually states:

> Our historical average return net to our investors has been about 5 times their invested capital. . . That includes the five complete failures we've had out of our approximately 50 start-ups and includes 75% of Fund IV still being carried at our cost . . . so our returns should exceed 5X going forward.  Some VC firms can show higher returns to their investors but I'll use a 5X and 7.5X return as conservative examples.[54]

Godshall alleges that the PIA represented that his investment interest would be worth more than one million dollars at payout,[55] but the PIA does not contain any representation about what Godshall's investment interest would be worth at payout.  Moreover, the fund solicitation letter contained a range of possible payouts based on various possibilities for the amount of funds raised and the rates of returns.  For example, the letter states that "[i]f Fund V is $35 MM and 5X return, the profit per point is $1.4 MM."[56] Since Godshall only purchased one quarter of a point,[57] pursuant to

---

[53]Amended Counterclaim, Docket Entry No. 38, ¶¶ 4, 10.

[54]Letter, Exhibit B, Docket Entry No. 46-3, p. 2.

[55]Amended Counterclaim, Docket Entry No. 38, ¶ 6.

[56]Letter, Exhibit B to Murphree's MSJ, Docket Entry No. 46-3, p. 2.

[57]Amended Counterclaim, Docket Entry No. 38, ¶ 8 ("Murphree sold to Godshall one-quarter of one-percent (0.25%) of the net profit from the fund at the end of the ten-year term:  1.25% of the 20% 'carry' equals 0.25% of the entire 100% of the fund, after the 80% limited partners first receive all of their initial investment back:  1.25%/5 = 0.25%.").

this possibility, Godshall's investment interest would have been worth far less than one million dollars at payout. Godshall alleges that Murphree told him "that the partnership would comprise a greater than $100 million fund,"[58] but this allegation is belied by the range of possible fund amounts set out in the fund solicitation letter.[59]

Godshall alleges that "at the time of the 'investment' Murphree failed to disclose that Murphree had personal financial difficulties in fact needed the money from Godshall for his own purposes."[60] This allegation is belied not only by the fund solicitation letter, but also by the affidavit that Godshall submitted in opposition to Murphree's motion for summary judgment. The opening sentence of the fund solicitation letter states: "I need a small cash infusion now to allow me to do productive work without having to worry about paying the bills while we raise Fund V."[61] In his affidavit Godshall acknowledges that the fund solicitation letter he received from Murphree described Murphree's "need for immediate cash. . . ."[62]

---

[58]Id. ¶ 9.

[59]Letter, Exhibit B to Murphree's MSJ, Docket Entry No. 46-3, p. 2.

[60]Amended Counterclaim, Docket Entry No. 38 ¶ 11.

[61]Letter, Exhibit B to Murphree's MSJ, Docket Entry No. 46-3, p. 1.

[62]Affidavit of Ned A. Godshall, Exhibit B to Godshall's Response to Murphree's MSJ, Docket Entry No. 47-2, p. 1.

Godshall's argument that Murphree made materially false representations and omissions is based on the fact that Murphree's predictions about future events -- such as the fund's future performance and the future value of Godshall's investment -- did not come true.  Predictions of future events are not actionable as misrepresentations under Texas law absent evidence that Murphree purported to have special knowledge about the future event, Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex. 1983); Murphree knew that the representation was false when he made it, Dowling v. NADW Marketing, Inc., 631 S.W.2d 726, 728 (Tex. 1982); or Murphree made a promise as to his future performance that he had no intention of keeping.  Id.  See also Aquaplex, Inc. v. Rancho La Valencia, Inc., 297 S.W.3d 768, 774-75 (Tex. 2009) (per curiam) (citing Formosa Plastics, 960 S.W.2d at 48, and Spoljaric, 708 S.W.2d at 434).

Godshall alleges that over the course of the ten-year life of the partnership Murphree and Stephenson repeatedly assured him that he would be paid back, but Godshall has not included any statements in his affidavit or presented any other evidence from which a reasonable jury could conclude that Murphree purported to have special knowledge about the fund's future value, that Murphree knew that any of his alleged representations were false when made, or that Murphree made a promise as to his future performance that he had no intention of keeping.

-35-

Citing <u>Reynolds-Southwestern Corp. v. Dresser Industries</u>, 438
S.W.2d 135, 139 (Tex. App. — Houston [14th Dist.] 1969, writ ref'd
n.r.e.), and <u>Brosseau v. Ranzau</u>, 81 S.W.3d 381, 394 (Tex. App. —
Beaumont 2002, pet. denied), Godshall argues that

> a presumption of unfairness taints the transactions
> between Murphree and Godshall and requires Murphree to
> prove the fairness of the transaction. . . Although it is
> Murphree and not Godshall who must produce evidence . . .
> Godshall nonetheless submits evidence establishing that
> despite having a duty to fully disclose all matters
> affecting the partnership . . . Murphree failed to
> disclose that he had not raised the capital that he
> represented would be raised, Murphree failed to disclose
> that despite having raised $30 million as represented the
> payout to Godshall would not be between $1.4 and $2.1
> million, and/or Murphree failed to disclose that he had
> not actually raised $30 million as represented. *See*
> Ex. B, Affidavit.[63]

But missing from the summary judgment record is any evidence from
which a reasonable jury could conclude that Murphree had not
actually raised $30 million and did not intend to raise additional
funds. Moreover, the range of possible values stated in the fund
solicitation letter negates Godshall's assertion that Murphree did
not inform him that his income on an investment fund of $30 million
would be significantly less than $1.4-$2.1 million.

Godshall's reliance on <u>Reynolds-Southwestern</u> and <u>Brosseau</u> is
misplaced because these cases are inapposite. In <u>Reynolds-</u>
<u>Southwestern</u> the court held that transactions between corporations
with common board members are subject to close scrutiny and are

---

[63]Godshall's Response to Murphree's MSJ, Docket Entry No. 47,
pp. 5-6.

presumptively fraudulent.  The transaction at issue in this case is not a transaction between corporations with common board members. In Brosseau, 81 S.W.3d at 394-95, the court recognized the well-established principle that partners have a duty to one another to make full disclosure of all matters affecting the partnership and to account for all partnership profits and property, and that a managing partner owes his partners the highest fiduciary duty recognized in the law. See Huffington v. Upchurch, 532 S.W.2d 576, 579 (Tex. 1976).  Since Godshall's fraudulent inducement claim is necessarily based on representations alleged to have occurred before he and Murphree executed the PIA that made them partners, and since Godshall has failed either to allege facts or cite evidence capable of establishing the existence of a prior fiduciary or confidential relationship between him and Murphree, Godshall's argument that Murphree fraudulently induced him to enter the PIA by breaching a fiduciary duty of disclosure has no merit.  See Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997) ("[T]o impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit.").

Although Godshall argues that the PIA and the fund solicitation letter support his allegations that Murphree made false representations and omitted to disclose material information about the fund, its value, and its earnings potential that fraudulently induced him to enter the PIA, neither the text of the

PIA, the fund solicitation letter, nor the Godshall affidavit contain evidence that Murphree made any of the false representations or failed to disclose any of the material information alleged in Godshall's Amended Counterclaim.  In fact, the text of the fund solicitation letter actually negates Godshall's claim of fraudulent inducement because it contradicts his allegations that Murphree made false representations and failed to disclose material information.  Because Godshall has failed to cite evidence from which a reasonable fact-finder could conclude that Murphree made false representations or omissions of material fact that induced Godshall to execute the PIA, the court concludes that Murphree is entitled to summary judgment on Godshall's counterclaim for fraudulent inducement.

> (b)  Breach of Fiduciary Duty

Godshall alleges that

> Murphree sold and assigned a partnership interest to Godshall; such a transaction is between two partners.  In such a transaction, especially in light of Murphree's position as majority GP interest holder, Murphree owed a fiduciary duty to Godshall.  Murphree's misrepresentations, obfuscation, and likewise failure to present all the facts known to him demonstrate Murphree's breach of his fiduciary duty.[64]

In support of this counterclaim for breach of fiduciary duty Godshall cites his own affidavit stating in pertinent part that

> Mr. Murphree provided to me a letter in which he described the venture capital fund ("Fund V"), and his

---

[64]Amended Counterclaim, Docket Entry No. 38, p. 8 ¶ 20.

-38-

need for immediate cash so that he could continue
fundraising. In that solicitation letter, Mr. Murphree
stated that he already had about $30 million in closings
and commitments . . . I understood this statement to mean
that he already had at least $30 million in Fund V, and
that he projected a closing of about $100 million. . .

At no time did Mr. Murphree . . . or anyone [on] his
behalf, inform me that he had not actually raised $30
million at the time I purchased an interest. At no time
did Mr. Murphree or anyone on his behalf inform me that
the income on $30 million would be significantly less
than the predicted $1.4 - $2.1 million. At no time did
Mr. Murphree or anyone on his behalf disclose to me that
he had not raised the additional capital that he
represented to me that he would raise.[65]

To establish a claim for a breach of fiduciary duty a
complaining party must show: (1) that a fiduciary relationship
existed, (2) a breach of that duty, and (3) an injury to the
complaining party or a benefit to the fiduciary as a result of the
breach. See Lundy v. Masson, 260 S.W.3d 482, 501 (Tex. App. —
Houston [14th Dist.] 2008, pet. denied). A fiduciary duty requires
the fiduciary to place the interest of the other party before his
or her own. Id. Thus, where a fiduciary relationship exists, the
burden is upon the fiduciary to show he acted fairly and informed
the other party of all material facts related to the challenged
transaction. Brazosport Bank v. Oak Park Townhouses, 889 S.W.2d
676, 684 (Tex. App. — Houston [14th Dist.] 1994, writ denied).

Under Texas law a fiduciary has a duty to disclose
information. McBeth v. Carpenter, 565 F.3d 171, 179 (5th Cir.
2009). However, for a fiduciary relationship to exist incident to

---

[65]Affidavit of Ned A. Godshall, Exhibit B to Godshall's
Response to Murphree's MSJ, Docket Entry No. 47-2, p. 2.

a business transaction such as the one at issue here "there must be a fiduciary relationship before, and apart from the agreement made the basis of the suit." Schlumberger, 959 S.W.2d at 177. See also McBeth, 565 F.3d at 178 ("based on Texas law, once such a partnership is established, fiduciary responsibilities flow between the parties"). Godshall has not cited any evidence capable of establishing that he had a fiduciary relationship with Murphree that existed separate and apart from the agreement made the basis of this lawsuit, i.e., the PIA. Absent such evidence a reasonable jury could not conclude that a fiduciary relationship between Godshall and Murphree existed before, and apart from, the agreement made the basis of the suit, i.e., the PIA. Moreover, for the reasons stated in § IV.B.2(a), above, the court has already concluded that Godshall has failed to cite any evidence from which a reasonable jury could conclude that at the time Godshall purchased his interest Murphree had not actually raised $30 million and did not intend to raise additional funds, or that Murphree had not informed Godshall that the income on $30 million would be significantly less than $1.4 - $2.1 million. Accordingly, Murphree is entitled to summary judgment on Godshall's breach of fiduciary duty counterclaim.

(c)  Constructive Trust/Unjust Enrichment and Rescission

A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. A constructive trust may be imposed based on the existence of a fiduciary or confidential

-40-

relationship or when there has been actual fraud. <u>Swinehart v.</u>
<u>Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.</u>, 48 S.W.3d 865,
878 (Tex. App. — Houston [14th Dist.] 2001, pet. denied) (citing
<u>Meadows v. Bierschwale</u>, 516 S.W.2d 125, 128 (Tex. 1974)).   Texas
law allows a party who is induced by fraud to enter into a contract
to rescind the contract or to sue for damages.   <u>See</u> <u>Fortune</u>
<u>Production Co. v. Conoco, Inc.</u>, 52 S.W.3d 671, 676-77 (Tex. 2000)
(citing <u>Dallas Farm Machinery</u>, 307 S.W.2d at 238-39).   Because
Godshall has failed to cite evidence capable of establishing either
that Murphree engaged in actual fraud by making a false
representation or failing to disclose information that he had a
duty to disclose, or that Godshall breached a fiduciary duty, the
court concludes that Murphree is also entitled to summary judgment
on Godshall's counterclaims for constructive trust/unjust
enrichment and rescission.   <u>See</u> <u>Tyra v. Woodson</u>, 495 S.W.2d 211,
213 (Tex. 1973) ("Our holdings . . . are to the effect that for a
constructive trust to arise there must be a fiduciary relationship
before, and apart from, the agreement made the basis of the suit.
Such is our holding here."); <u>Fortune</u>, 52 S.W.3d at 676-77
(recognizing rescission as a remedy for fraudulent inducement).[66]

----

[66]In addition to alleging that he is "entitled to rescission
of the transaction and a return of his investment, including
interest at the legal rate from the date of tender," based on
fraud, breach of fiduciary duty, and constructive trust, Godshall
alleges the he is entitled to rescission because "the [PIA] is not
valid because it presents ambiguous and contradictory language on
essential terms," and "because of Murphree's active obfuscation and
continued misrepresentation and promise 'to pay' up to and
(continued...)

(d)   Violation of the Texas Blue Sky Laws

The Texas Securities Act ("TSA") provides for civil liability of a "person who offers or sells a security . . . by means of an untrue statement of a material fact or omission to state a material fact." Tex. Rev. Civ. Stat. art. 581-33(A)(2); Geodyne Energy Income Production Partnership I-E v. Newton Corp., 161 S.W.3d 482, 484-85 (Tex. 2005). See also R2 Investments v. Phillips, No. 3:02-cv-323-N, 2003 WL 22862738 (N.D. Tex. Mar. 26, 2003) ("The Texas Securities Act prohibits false statements and material omissions in the sale of securities and imposes liability upon sellers, aiders and control persons who offer or sell securities 'by means of an untrue statement of a material fact or omission.'"). Violation of the Texas Securities Act requires proof of the sale of a security by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statement made, in light of the circumstances, not misleading, and a tender of the securities. See Tex. Rev. Civ. Stat. art. 581-33(A)(2); Geodyne, 161 S.W.3d at 484-85.

Godshall contends that Murphree violated the TSA by making false representations and omissions alleged in his Amended

_____

[66](...continued) including the date Murphree filed suit attempting to 'get out' of his obligations." Amended Counterclaim, Docket Entry No. 38, ¶ 23. In response to Murphree's second motion to dismiss, Godshall acknowledges that "[r]escission is an equitable remedy appropriate in instances of **fraud**, and **unjust enrichment**." See Godshall's Response to Second Motion to Dismiss, Docket Entry No. 42, p. 19. Godshall has not cited and the court has not found authority supporting a claim for rescission outside of these parameters.

Counterclaim.  The evidence that Godshall cites in support of his counterclaim for violation of the TSA is the same as the evidence he cites in support of his other counterclaims.  For the reasons stated in § IV.B.2.(a), above, the court has already concluded that Godshall has failed to cite evidence from which a reasonable juror could conclude that when Godshall decided to enter the PIA, Murphree made any false representations or material omissions.  In the affidavit submitted in opposition to Murphree's motion for summary judgment Godshall asserts that when he purchased the Transferred Interest Murphree failed to disclose that he had not actually raised $30 million, that Murphree never informed him that his income on an investment fund of $30 million would be significantly less than $1.4 - $2.1 million, and that Murphree never disclosed that he had not raised additional capital that he represented he would raise.[67]  But Godshall fails to cite any evidence from which a reasonable juror could conclude that Murphree had not actually raised $30 million, and the text of the fund solicitation letter negates Godshall's assertion that Murphree did not inform him that his income on an investment fund of $30 million would be significantly less than $1.4-$2.1 million.  Nor does Godshall cite any evidence from which a reasonable juror could conclude that when he and Godshall entered into the PIA, Murphree did not intend to raise additional capital.  Under Texas law a promise of future performance is not actionable as a

---

[67]Id.

misrepresentation absent evidence that the speaker never intended
to perform as promised.  Godshall presents no such evidence in this
case.  Accordingly, the court concludes that Murphree is entitled
to summary judgment on Godshall's counterclaim for violation of the
TSA.  See R2 Investments, 2003 WL 22862738, at *7 (dismissing the
TSA claim because the plaintiff "failed to identify any false
statements or material omissions by" the defendant).

## V.  Conclusions and Orders

For reasons stated in § II, above, the court concludes that
Godshall's counterclaims are not subject to dismissal as time-
barred, but that Godshall's counterclaim for fraudulent inducement
is subject to dismissal for failure to state a claim for which
relief may be granted because his allegations of fraud fail to
satisfy the pleading requirements for fraud-based claims
established by Federal Rule of Civil Procedure 9(b).  Accordingly,
Murphree's Second Motion to Dismiss Pursuant to Rule 12(b)(6) and
Rule 9(b) (Docket Entry No. 40) is **GRANTED IN PART and DENIED IN
PART**.

For the reasons stated in § III, above, the court concludes
that Godshall's alternative motion for leave to amend his
counterclaims to satisfy the Rule 9(b) requirements for pleading
fraud with particularity should be denied.  Accordingly, Godshall's
Alternative Motion for Leave to Amend Counterclaim Under Rule 15(a)
made in Docket Entry No. 42 is **DENIED**.

-44-

For the reasons stated in § IV, above, the court concludes that Murphree is entitled to summary judgment on his claim for declaratory judgment because Godshall has failed to cite evidence from which a reasonable jury could conclude that the PIA is subject to rescission based on any of Godshall's counterclaims, and that Murphree is also entitled to summary judgment on Godshall's counterclaims.   Because this conclusion is sufficient to resolve the dispute between the parties, Murphree's motion for summary judgment for the alternative reason that Godshall's counterclaims are time-barred is moot.   Accordingly, Plaintiff Dennis E. Murphree's Motion for Summary Judgment (Docket Entry No. 46) is **GRANTED IN PART and DENIED IN PART.**

**SIGNED** at Houston, Texas, this 24th day of September, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-45-